LOLLEY, J.
11 This criminal appeal arises from the First Judicial District Court, Parish of Caddo, State of Louisiana. The defendant, Robert Jerome George, was convicted by a unanimous jury of failure to register as a sex offender, a violation of La. R.S. 15:542 et seq. George’s motions for new trial and for post-judgment verdict of acquittal were denied. A timely motion to reconsider sentence was denied without a hearing, and this appeal followed. For the following reasons, George’s conviction and sentence are affirmed.
Facts
George is a convicted sex offender and, as such, is required to register with local law enforcement authorities pursuant to La. R.S. 15:542 et seq. His underlying felony conviction is forcible rape, for which George received a sentence of 10 years at hard labor.[1] There is no dispute that, after his release from prison, George was fully apprised of the sex offender registration requirements. On release, offenders are presented with a “Notice of Sex Offender and Sexual Violent Predator Registration and Notification Requirements,” which is generally referred to as the “parole contract.” The parole contract provides that offenders, such as George, notify the parish sheriffs office within ten (10) days of a change in residence. On November 19, 2004, and again on June 9, 2006, George signed parole contracts verifying that he received copies of them, and understood the registration requirements and penalties. As a tier three offender, George was required to register quarterly with the Caddo Parish |aSheriffs Office. His notification and registration requirements were for life.
On October 18, 2011, George completed a quarterly registration with the Caddo Parish Sheriffs Office. He registered his residence as 2532 Lillian Street in Shreveport, Louisiana, his grandmother’s home. Lieutenant Greg Winget was the investigator in this case and testified on behalf of the State at the criminal trial. Lieutenant Winget explained the registration procedures and requirements to the jury and further testified that, on or about October 26, 2011, he was made aware that George was not residing at 2532 Lillian Street. *733 He further testified that he went to the residence and spoke with George’s grandmother, Verta Green. According to Lt. Winget, Green was on the front porch when he arrived. He spoke with her on the porch and did not go inside the residence. Green told Lt. Winget that George was her grandson. Lieutenant Winget testified:
She said that at one time he was living there but she hadn’t seen him about eight months. At that point she said she didn’t know his whereabouts ... I asked if he was residing there and she said that he did at one point but he moved out about eight months ago.
Lieutenant Winget stated that Green did not seem confused and that he had. no reason to believe that she did not understand the questions he was asking her. The following day, Lt. Winget obtained an arrest warrant for George, who was subsequently arrested on November 10, 2011, during a traffic stop on 1-20 in Tyler, Texas. During the stop, George produced a driver’s license bearing the address of 2582 Lillian Street.
|sOn cross-examination, Lt. Winget acknowledged that he did not know where George had moved and that, based on the information he had on October 18, 2011, when George completed his quarterly registration, he was in compliance with the law. It was not until eight days later that Lt. Winget was informed that George was not residing at the Lillian Street address. Lieutenant Winget agreed that it was not a violation of the registration law for an offender to travel the Interstate so long as the offender does not change permanent residences. Lieutenant Winget explained that there is no supervision component to the registration requirements; George was free to come and go on a daily basis with the caveat that he give the required notice to the sheriffs office upon a change in residence. Finally, Lt. Winget testified that he tried to call George’s cell phone number before securing the arrest warrant, but there was no answer and he did not leave a message.
Green also testified. She identified George as her grandson and stated that she remembered Lt. Winget coming to her house to ask about the defendant. Green testified that she told Lt. Winget that George “wasn’t there at the time.” When asked about the period of time George had been gone from her residence, Green responded that she did not understand the question. Her testimony was as follows:
Q: Did you tell the Sheriff that came there and questioned you that [the defendant] was gone for a period of time?
A: Well, he was gone for a period of time.
Q: Do you remember how long he was gone for or how long you told the officer that he was gone for?
[4A: No, I don’t, I don’t remember all that.
Q: Do you know how long, do you remember how long he was gone for?
A: No, I don’t.
Q: Did he live there previously?
A: Yes, earlier, yeah.
Q: He lived there earlier?
A: Yeah, lived with me, he lived with me for a while.
Q: Do you know when he moved out?
A: I can’t remember when he moved out.
Q: Was it sometime last year in 2011 during the middle of 2011?
A: Somewhere along in there.
Q: How long had it been since he moved out to when that detective came to talk to you, do you know?
A: No, I don’t.
*734 Q: Do you know if it was months, weeks, something like that, do you have any idea?
A: Something like that.
Q: As far as weeks or months?
A: As far as weeks.
Green further testified that she had not seen her grandson since before the detective visited her and she did not know where he had moved. She was aware that he was a convicted sex offender and that he had listed her address as his residence. Green stated that George kept belongings at her home, though not much, and that she discarded them in the trash after his arrest.
|fiOn cross-examination, Green agreed that she thought George had moved, because he had been gone for a “few days.” She stated that George never told her that he was moving.
Lieutenant Owen McDonnell of the Cad-do Parish Sheriffs Office was qualified and accepted as an expert in fingerprint examination and testified on behalf of the State. He confirmed through fingerprint comparison that George was the same individual convicted of forcible rape in 1997.
George Mize, of the Louisiana Probation and Parole Department (the “Department”), testified that he is the individual assigned to cover all sex offender registrations. Mize explained the registration procedure to the jury. He instructed that, when an offender is released from prison, he or she reports to the Department and receives the parole contract, as earlier mentioned, that contains information detailing the conditions and requirements of parole and the penalties for violations thereof. Regarding changes of residence, Mize explained that, if the offender is still on active probation, he or she must get prior approval before moving residences. Once the probation or parole is complete, however, the offender must simply comply with the post-parole requirement to notify the sheriff’s office within ten (10) days of a change in residence. Mize confirmed that George received the information on registration and signed the requisite documents acknowledging his receipt and understanding of the registration requirements and penalties. Finally, Mize identified the signatures on the 2004 and 2006 registration packets as that of the defendant.
16George testified on his own behalf. He maintained that he lived with his grandmother at the Lillian Street address for over two years. His father lived there with them before he passed away, and George stated that he helped care for his diabetic father prior to his passing. His father had lost all of his limbs to diabetes. George adamantly testified that he “never moved.” He explained that he had been in Tyler, Texas, for two days looking for his birth mother, whom he had never met, and was on his way home to Shreveport when he was stopped and arrested. When asked about his grandmother’s testimony, George testified that she was lying; however, he then stated that she is elderly and confused and “not stable to really just talk.” He further suggested that Lt. Win-get had “tricked” his grandmother into saying that he had moved and had been gone for eight months.
On cross-examination, George agreed that he has a prior failure to register felony conviction in Bossier Parish. He stated that he “did that one but I ain’t do this one.” George further acknowledged having a second offense possession of marijuana conviction.
As previously stated, the jury found George guilty as charged. At sentencing, the trial court described the circumstances of the underlying forcible rape conviction and found the crime to be “shocking.” The trial court emphasized that George *735 had been advised repeatedly of the registration requirements and clearly failed to scrupulously adhere to the law. In addition, the trial court noted the myriad of arrests of George after his release from prison, indicating that he had not lived a law-abiding life. The trial court noted the guidelines of La. C. Cr. P. art. 894.1 and opined 17that the maximum sentence was appropriate. As previously stated, George was sentenced to 10 years at hard labor without the benefit of probation, parole, or suspension of sentence. This appeal ensued.
Discussion

Sufficiency of the Evidence

In his first assignment of error, George argues that the State failed to prove beyond a reasonable doubt that he did not comply with the registration requirements of La. R.S. 15:542, because it did not prove that he had actually moved residences. The State relies on the testimony of Lt. Winget and Green, arguing that the evidence clearly shows that George moved from Green’s residence sometime (if not eight months) prior to his quarterly registration in October 2011.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.05/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La.App.2d Cir.01/09/08), 974 So.2d 181, writ denied, 2008-0499 (La.11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.02/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App Cir.01/14/09), 1 So.3d 833, writ denied, 2009-0310 (La.11/06/09), 21 So.3d 297.
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.02/25/09), 3 So.3d 685, writ denied, 2009-0725 (La.12/11/09), 23 So.3d 913; State v. Hill, 42,025 (La.App.2d Cir.05/09/07), 956 So.2d 758, writ denied, 2007-1209 (La.12/14/07), 970 So.2d 529.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Speed, 43,786 (La.App.2d Cir.01/14/09), 2 So.3d 582, writ denied, 2009-0372 (La.11/06/09), 21 So.3d 299.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its | ¡¡sufficiency. State v. Speed, supra; State *736 v. Allen, 36,180 (La.App. 2d Cir.09/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.03/28/03), 840 So.2d 566, 2002-2997 (La.06/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
Louisiana R.S. 15:542(0(2) requires certain offenders, once released, to appear in person within three business days to register with the appropriate law enforcement agencies. In subsection (C)(3) the statute further provides that “[k]nowingly providing false information to any law enforcement officer, office, or agency required to receive registration information ... shall constitute a failure to register pursuant to R.S. 15:542.1.4(A)(1).”
An offender convicted of forcible rape, an aggravated offense, shall renew his or her registration every three months (quarterly). La. R.S. 15:542.1.1(A)(1). Louisiana R.S. 15:542.1.2 states, in pertinent part, as follows:
A. Those persons required to register pursuant to the provisions of this Chapter shall appear in person at the sheriffs office in the parish of residence, or the police department in the case of a municipality with a population in excess of three hundred thousand, where the offender is currently registered to update information within three business days of establishing a new or additional physical residential address or of changes in information previously provided when any of the following occur:
* * * * ⅜ *
(3) The offender has been absent from Ms current address of registration for more than thirty consecutive days or an aggregate of thirty days or more per calendar year and is physically present at another address during that same time period.
⅜ ⅜: ⅜ ⅜ ⅜ ⅜
E. ... (2) Any sex offender who fails to provide change of address or other information as provided in this Section shall be subject to criminal prosecution as provided in R.S. 15:542.1.4.
F.(l) The offender shall appear in person at the sheriffs office in the parish of residence at least three days prior to establishing temporary lodging to provide temporary lodging information regarding any place where the offender plans to stay for seven consecutive days or more.
(2) If the location of the temporary lodging is outside of the boundaries of the parish of registration, then the sheriff shall notify the sheriff of the parish of temporary lodging. If the location of the temporary lodging is out of state, then the sheriff shall notify the bureau. (Emphasis added.)
Section 11(C) of the parole contract requires as follows:
C. CHANGE OF ADDRESS REQUIREMENTS (REGISTRATION)
Sex offenders and sexual violent predators and child predators are required to notify Louisiana State Police, the Sheriffs Office in the parish of residence, and if applicable the Chiefs of Police, within ten (10) days of change of address. You must notify the Sheriff in the parish of your initial registration, the Louisiana State Police, and if applicable the Chief of Police. When the address involves a different parish, or different incorporated area that has a police department, then you must notify Sheriff and Chief of Police where you initially registered as well as the Sheriff and Chief of Police if you move to a new incorporated area that has a Police Department. (Emphasis in original.)
*737 It is not disputed that George is a convicted sex offender subject to the registration requirements. Further, there is no dispute that George was provided the notification and registration requirements upon his release. The only question is whether the evidence presented by the State was sufficient for the jury to find beyond a reasonable doubt that George was absent from the Lillian Street residence for a period of 80 days and failed to | ^notify the sheriffs office of this change in residence as required by the statute. Our review of the trial proceedings leads to the conclusion that the State did a less than stellar job proving its case, especially regarding the amount of time that George had been absent from his grandmother’s home prior to Lt. Winget’s visit there. However, the totality of the evidence, coupled with the discretion afforded the trier of fact, supports a conclusion that sufficient evidence was presented to support the conviction.
Green testified that George previously lived with her, but had moved out before Lt. Winget came to the residence to check on him. While she testified that she could not remember at trial the exact length of George’s absence from her home prior to Lt. Winget’s visit, Green agreed that it was “weeks” that he had been gone and that she did not know his whereabouts at the time. She was worried about her grandson because he had left the residence and she was unable to contact him.
Lieutenant Winget testified that shortly after George’s October 18th quarterly renewal of his registration, at which time he listed 2532 Lillian Street as his residence, he became aware that George did not reside at that address. When Lt. Winget went to the residence, Green advised him that George had been gone from her residence for eight months, and she did not know his whereabouts. The warrant for George’s arrest was issued nine days after his quarterly registration. While somewhat tenuous on the cold record, this evidence reasonably leads a rational trier of fact to conclude that George was absent from the Lillian Street residence for at least 80 days and failed to notify the sheriffs office within 10 days of his relocation. See State v. Cavazos, 2011-0733 (La.App. 4th Cir.05/16/2012), 94 So.3d 870, writ denied, 2012-1372 (La.10/26/12), 99 So.3d 645, where the defendant was ordered out of the house, put on a bus and told never to return, evidence was sufficient to convict him of failure to register as a sex offender.
Notably, a jury saw and heard firsthand the witnesses testify. Significantly, those witnesses included George himself, who testified that he never moved residences and attempted to cast doubt on his grandmother’s veracity and/or competency to advise the jury as to his residency. He also suggested that Lt. Winget had “tricked” his grandmother into agreeing to testify that George had moved. The jury clearly made a credibility determination, electing to credit the testimony of Green and Lt. Winget. After watching and hearing George’s testimony, the jury chose to disregard it, and this determination is within the province and sound discretion of the trier of fact and should not be disturbed on appeal. Accordingly, we conclude that this assignment of error is without merit.

Excessive Sentence

In his second assignment of error, George argues that the maximum sentence of 10 years at hard labor is excessive. He submits that the trial court failed to adequately consider the factors of La. C. Cr. P. art. 894.1 and did not tailor the sentence to him. George suggests that the trial court improperly focused on the circumstances of the underlying conviction of *738 forcible rape and his prior criminal record. We disagree.
A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of discretion, this Court will not | isset aside a sentence as excessive. State v. Williams, 2003-3514 (La.12/13/04), 893 So.2d 7; State v. McCall, 37,442 (La.App.2d Cir.08/20/03), 852 So.2d 1162, writ denied, 2004-0039 (La.12/17/04), 888 So.2d 858. On review, the appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. Id.
In reviewing claims of excessive sentence, an appellate court uses a two-step process. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial court is not required to list every aggravating or mitigating circumstance so long as the record reveals that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dillard, 45,633 (La.App.2d Cir.11/03/10), 55 So.3d 56, writ denied, 2010-2853 (La.11/18/11), 75 So.3d 454.
The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant’s personal history (his age, family ties, marital status, health, employment record), pri- or criminal history, seriousness of the offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Dillard, supra. There is no requirement that specific matters be |Mgiven any particular weight at sentencing. State v. Shumaker, 41,547 (La.App.2d Cir.12/13/06), 945 So.2d 277, writ denied, 2007-0144 (La.09/28/07), 964 So.2d 351.
Second, a sentence violates La. Const. Art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 2001-0467 (La.01/15/02), 805 So.2d 166; State v. Bradford, 29,519 (La.App.2d Cir.04/02/97), 691 So.2d 864. A trial court has broad discretion in sentencing offenders. Absent a showing of manifest abuse of that discretion, an appellate court may not set aside a sentence as excessive. State v. Kidd, 45,638 (La.App.2d Cir.11/03/10), 55 So.3d 90.
As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. State v. Cozzetto, 2007-2031 (La.02/15/08), 974 So.2d 665.
Louisiana R.S. 15:542.1.4 provides, in pertinent part:
A. (1) A person who fails to register, periodically renew and update registration, provide proof of residence or notification of change of address or other registration information, or provide community notification as required by the provisions of this Chapter, and a person who knowingly provides false information to a law enforcement agency as provided in R.S. 15:542(0(3), shall, upon first conviction, be fined not more than one thousand dollars and imprisoned *739 with hard labor for not less than two years nor more than ten years without benefit of parole, probation, or suspension of sentence.
| lfiDuring sentencing, the trial court noted the “shocking” facts of the underlying conviction and emphasized that George continued to exhibit a disregard for the law by failing to comply with the sex offender registration requirements once before in Bossier Parish, Louisiana. In addition, the trial court noted that George was arrested numerous times for various offenses including disturbing the peace, failure to register, and possession of marijuana, after his release on the forcible rape conviction. The trial court expressly stated that it had reviewed the factors of La. C. Cr. P. art. 894.1. In so doing, it determined that: there existed an undue risk that George would commit another crime if not incarcerated; George was in need of correctional treatment in a custodial environment; and, any lesser sentence would deprecate the seriousness of the offense. Evidently, the nature of the underlying forcible rape conviction weighed heavily on the trial court, yet it expressly stated that all of the facts and circumstances of the case supported a conclusion that the maximum sentence was warranted. Notably, this charge is in fact George’s second failure to register, and he could have been exposed to a maximum of 20 years had he been charged as a second offender.
The trial court remains vested with great discretion in sentencing within the range and, here, it provided adequate reasons for sentencing George. Therefore, based on this record, the trial court did not abuse its vast discretion in imposing this sentence, and the imposition of the 10-year sentence is not excessive, nor a purposeless and needless infliction of pain |1Rand suffering. It does not shock the sense of justice, and this assignment of error is without merit.

Error Patent

An error patent review indicates that, with regard to the mandatory fine imposed under La. R.S. 15:542.1.4, the sentence imposed is illegally lenient because the trial court faded to impose the $1,000.00 fine. George is not prejudiced in any way by the trial court’s failure to impose the mandatory fíne. Louisiana C. Cr. P. art. 882(A) provides that an illegally lenient sentence may be corrected at any time by an appellate court on review. We, however, are not required to take such action. State v. Griffin, 41,946 (La.App.2d Cir.05/02/07), 956 So.2d 199; State v. Sims, 40,300 (La.App.2d Cir.10/26/05), 914 So.2d 594. Given George’s apparent indigent status, we decline to impose a fine at this juncture.
Conclusion
For the foregoing reasons, the conviction and sentence of the defendant, Robert Jerome George, are affirmed.
AFFIRMED.

. During sentencing, the trial court indicated having reviewed the record in the underlying case and explained that George and one other defendant had been arrested and charged with the aggravated rape of three children (ages 7, 8 and 12), but, "for whatever reason,” the district attorney had allowed this defendant to plead to one count of forcible rape.