Judgment rendered March 3, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 53,742-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

RONALD KEITH BERRY                          Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 355,230

Honorable Charles Tutt, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Peggy J. Sullivan

JAMES E. STEWART, SR.                    Counsel for Appellee
District Attorney

WILLIAM C. GASKINS
 ALEXANDRA L. PORUBSKY
Assistant District Attorneys

* * * * *

Before PITMAN, BLEICH (*Pro Tempore*),
and BODDIE (*Ad Hoc*), JJ.

**PITMAN, J**.

Defendant Ronald Berry appeals his conviction of failure to register as a sex offender and his sentence of two years at hard labor without benefits. For the following reasons, we affirm.

## FACTS

On November 15, 2018, Defendant was charged by amended bill of information with failure to register as a sex offender on January 4, 2018, in violation of La. R.S. 15:542(C)(1)(m). The amended bill states that Defendant was a resident of Caddo Parish, Louisiana, on the offense date, that he "failed to provide every email address, online screen name, or other online identifier [he] used…to communicate on the internet as required by La. R.S. 15:542(C)(1)," and that he had been previously convicted on April 10, 1995, of molestation of a juvenile in Caddo Parish.

A jury trial was held November 20-21, 2019. The following testimony was adduced at trial.

Sergeant Antwoine White of the Shreveport Police Department ("SPD") sex crimes unit received a complaint in 2017 that Defendant unlawfully possessed a social media account. He affirmed that Defendant had been registering as a sex offender in Caddo Parish, but stated that he had discovered that Defendant had a Facebook account listed under "Keith Black" and that the account's profile picture matched the picture from the police database for sex offender registrants. He stated that he prepared a report and assigned the case to Detective Monique Coleman, also of the SPD sex crimes unit.

Sgt. White further testified that he received a call on November 27, 2017, from a female, who desired to remain anonymous, and reported the

information about the Facebook web page. He stated that he did not have any information on the female who reported the page to him, and he did not investigate her or her motivations for contacting him. He testified that he verified through a sex offender registry called "Offender Watch" that Defendant was registered as a sex offender and stated that every sex offender who lives in the city of Shreveport, Louisiana, is required to register annually.

Sgt. White also testified that prior to investigating the Facebook page, he had had no contact with Defendant, that he was not the person who would have advised him of the requirements of sex offender registration and that he was not present when Defendant was advised of those requirements. He stated that he did not investigate who set up the Facebook page, and he did not know what email address was associated with it. He testified that he was able to ascertain that Defendant's full name is Ronald Keith Berry.

Det. Coleman testified that she was assigned Defendant's case in 2017. She identified him and stated that she determined in the course of her investigation that he was a sex offender and was required to register until 2024. She stated that she found Defendant's Facebook page and identified his profile picture on the web page that bore the name "Keith Black." A copy of that web page was admitted into the record.

Det. Coleman further testified that she spoke with Defendant at the police station on January 4, 2018. This interview was recorded, but a copy was not introduced into evidence. She stated that she read Defendant his Miranda rights and gave him a form so that he could read the rights himself. He signed the form. During the interview, Defendant confirmed his identity,

2

that he was a sex offender and that he had a Facebook page under the name "Keith Black."

Det. Coleman also testified that Defendant told her that he had had the Facebook page for a couple of years. He stated that a family member helped him set up the account, but he did not think that he would actually be using it. For that reason, he had the family member set it up under the name of "Keith Black." He told her that he did eventually start using the Facebook account and that he had used it for about two years.

Det. Coleman further confirmed that the sex crimes unit was responsible for keeping control of and tracking sex offender registration statuses and that the official documents related to sex offender registrations are kept at the sex crimes unit in a secure room. She identified Defendant's sex offender registration documents, which included his sex offender registration contract that he provided to the sex crimes unit prior to the instant offense.

Det. Coleman also stated that Defendant provided an email address to her and confirmed that it was linked to his Facebook page. She testified that despite this admission by him, Defendant's sex offender registration contract did not indicate that he had an email address, Facebook page or any online presence, even though there was a space on the contract for providing such information. She testified that Defendant had initialed the page of the contract that contained a space for providing this information, as well as at the end of the contract. She stated that the contract was dated February 13, 2017, which was the last time Defendant had registered prior to the instant offense. A copy of the contract was admitted into evidence.

3

After the interview concluded, Det. Coleman advised Defendant that it was against his sex offender registry contract to possess the Facebook page. She arrested him for violating La. R.S. 14:91.5, which provides that sex offenders cannot have social media pages if they were convicted of an offense involving a minor child.

Det. Coleman testified that after Defendant's arrest, she was informed by an assistant district attorney ("ADA") that a constitutional challenge was being brought against the law for which Defendant had been arrested, and the state was going to delay prosecution of the matter pending the outcome of the challenge to the law. She stated that although she had told Defendant at the interview that she would be seeking Facebook records, after her conversation with the ADA, she did not pursue the matter further.

During cross-examination, Det. Coleman testified that she viewed the Facebook page while she was interviewing Defendant and that it was public, meaning that anyone could look at it. She stated that it was unclear if anyone could post to a public page, because that depended upon the user's settings for the page. She also stated that Defendant told her that he is the only one who had access to his username and password. She testified that she did not have any contact with the person who reported the Facebook page to SPD. She confirmed that Defendant's sex offender registration was up-to-date prior to the offense.

Lieutenant Skyler VanZandt with SPD's crime scene investigation and domestic violence units, was accepted as an expert in fingerprint identification and analysis. He testified that the certified copies of the fingerprints in docket number 173,425, the case charging Defendant with molestation of a juvenile in violation of La. R.S. 14:81.2(A) and (C)

4

occurring between January 1, 1995, and February 10, 1995, and to which he entered a guilty plea and was sentenced to nine years at hard labor, matched those of the Defendant taken in court the day of the trial in the case at bar. The certified copies of the bill of information and the minutes from docket number 173,425, including those fingerprints, were admitted into evidence. The state rested its case.

Outside the presence of the jury, the trial court informed Defendant that he did not have to testify, but he affirmed that he intended to testify in his own defense. Defendant stated that he lived at a Shreveport address and was convicted in 1995 of molestation of a juvenile. He was released on good behavior in June 1999, after serving about four years of his sentence. He stated that he is required to register as a sex offender three times a year—twice in Caddo Parish and once in the City of Shreveport. He affirmed that he registered as a sex offender in Caddo Parish in 2017. He has a sex offender ID, which is his driver's license with "sex offender" written on it. He also testified that he has a Facebook page under the name "Ronald Keith Berry" and that, at one time, the name on the page was "Keith Black."

Defendant testified that his daughter created the Facebook page using his middle name of Keith. There was no explanation for using the last name Black instead of Defendant's real last name except that he "[w]asn't acknowledging of it at the time." He stated that he was not aware his daughter had used the last name of Black. He also stated that he did not use the account until after his daughter graduated from college and that it did not occur to him to think about the paperwork dealing with his registration as a sex offender. He testified that his email address was connected to the Facebook page, so he did not think he had to specifically tell the Parish or

5

the City that the page had been created for him.  He stated that he had not been told he had to reveal if he was using social media— "[I]t just say that I have to inform the people that this is what I'm doing, and that's what I did." He further stated that he never hid anything, never ran, never tried to do anything wrong and always did what he was supposed to do.

On cross-examination, Defendant affirmed that he had prior convictions for possession of stolen things in 1992, forgery in 1993, misdemeanor possession of marijuana in 2008, failure to pay a sex offender registration fee in 2011 and a second misdemeanor possession of marijuana in 2011.  He confirmed Det. Coleman's testimony that he spoke with her about the Facebook page and that he "had had it a couple of years." He stated that he provided Det. Coleman with his email address and that the police already had that address.  He examined his sex offender registration contract from 2017 and affirmed that page three contained a space titled "Internet" and that in the spaces immediately following the words "Type," "User Name" and "Web Address," the form stated, "None."  He further stated that "[Y]'all didn't present … these papers whereas my email is on it."  The defense rested.

During deliberations, the jury asked the trial court to address the question of whether the failure to include an email or electronic communication address was the same as a failure to register as a sex offender.[1]  The trial court responded by calling the jury to the courtroom and rereading the statute.  After further deliberation, a unanimous jury rendered a verdict of guilty as charged.

---

[1] The jury's question was paraphrased by the trial court and this court.

On December 18, 2019, Defendant filed a motion for a post-verdict judgment of acquittal and a motion for new trial. On December 19, 2019, the trial court denied both motions. Defendant waived the sentencing delay. Prior to sentencing, the trial court stated that it had considered the evidence presented at trial and the requirements of La. C. Cr. P. art. 894.1. It found that there were no aggravating or mitigating factors which would influence the sentence and that its finding was that Defendant's Facebook page obtained under a different name was a deliberate attempt to avoid detection. It noted that failure to register as a sex offender is not a crime of violence and sentenced him to two years at hard labor without benefits. Defendant was advised of his appeal and post-conviction relief time limits. He objected to the sentence and now appeals.

## DISCUSSION

*Sufficiency of the evidence*

Defendant argues that neither La. R.S. 15:542(C)(1)(m) nor sex offender registration paperwork provided to him sufficiently notified him of the necessity of including a Facebook page in his paperwork if he were not using the same to communicate via the internet. He also argues that the state did not prove beyond a reasonable doubt that he was guilty of failure to register.

Defendant asserts that his daughter created a Facebook account for him and that his 2017 sex offender registration did not specifically state that he had to include that information. He argues that the statute requires any online screen name or identifier used to communicate on the internet be listed, but that the state provided no evidence that he was using the account to "communicate" on the internet or contact others. He points out that the

7

Facebook printout admitted at trial showed a profile picture, but no posts to the account. He contends that the state only proved that the Facebook account existed and that he knew of it. He argues that he is entitled to strict construction of the statute and that under such a standard, the state has not proven he used the Facebook account to "communicate" on the internet; and, therefore, he should be found not guilty.

The state argues that Defendant has a previous conviction for molestation of a juvenile and was required to register as a sex offender until 2024. It asserts that he admitted to his previous conviction and to possessing a Facebook account, previously under the name "Keith Black." It argues that he also admitted to not including that Facebook account on his triannual sex offender registration form, which he was legally required to do. It notes that he initialed the page of his sex offender registration contract regarding internet information and signed it on the last page. It further argues that the printed page of Defendant's Facebook account admitted into evidence shows him posting multiple pictures of himself, having over 47 contacts and 31 followers, and that he updated his profile picture as recently as December 30, 2017, proving that he used the account to "communicate" within the meaning of La. R.S. 15:542(C)(1)(m).

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004); *State v. Carter*, 42,894 (La. App.

8

2 Cir. 1/9/08), 974 So. 2d 181, *writ denied*, 08-0499 (La. 11/14/08),

996 So. 2d 1086. This standard, now legislatively embodied in La. C. Cr. P.

art. 821, does not provide the appellate court with a vehicle to substitute its

own appreciation of the evidence for that of the fact finder. *State v. Pigford*,

05-0477 (La. 2/22/06), 922 So. 2d 517; *State v. George*, 48,040 (La. App.

2 Cir. 5/15/13), 115 So. 3d 730.

The appellate court does not assess the credibility of witnesses or

reweigh evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442.

A reviewing court accords great deference to a jury's decision to accept or

reject the testimony of a witness in whole or in part. *State v. Eason*, 43,788

(La. App. 2 Cir. 2/25/09), 3 So. 3d 685, *writ denied*, 09-0725 (La. 12/11/09),

23 So. 3d 913; *State v. Hill*, 42,025 (La. App. 2 Cir. 5/9/07), 956

So. 2d 758, *writ denied*, 07-1209 (La. 12/14/07), 970 So. 2d 529.

The *Jackson* standard is applicable in cases involving both direct and

circumstantial evidence. An appellate court reviewing the sufficiency of

evidence in such cases must resolve any conflict in the direct evidence by

viewing that evidence in the light most favorable to the prosecution. When

the direct evidence is thus viewed, the facts established by the direct

evidence and inferred from the circumstances established by that evidence

must be sufficient for a rational trier of fact to conclude beyond a reasonable

doubt that defendant was guilty of every essential element of the crime.

*State v. Sutton*, 436 So. 2d 471 (La. 1983); *State v. George*, *supra*; *State v.*

*Speed*, 43,786 (La. App. 2 Cir. 1/14/09), 2 So. 3d 582, *writ denied*, 09-0372

(La. 11/06/09), 21 So. 3d 299.

Where there is conflicting testimony about factual matters, the

resolution of which depends upon a determination of the credibility of the

witnesses, the matter is one of the weight of the evidence, not its sufficiency. *State v. George*, *supra*; *State v. Speed*, *supra*; *State v. Allen*, 36,180 (La. App. 2 Cir. 9/18/02), 828 So. 2d 622, *writs denied*, 02-2595 (La. 3/28/03), 840 So. 2d 566, 02-2997 (La. 6/27/03), 847 So. 2d 1255, *cert. denied*, 540 U.S. 1185, 124 S. Ct. 1404, 158 L. Ed. 2d 90 (2004).

In order to support a conviction under La. R.S. 15:542(C)(1)(m), the state must prove that an offender (1) was convicted of a sex offense as defined in La. R.S. 15:541; (2) resided in Louisiana for the period during which he was required to register; and (3) failed to provide to law enforcement every e-mail address, online screen name or other online identifiers used by the offender to communicate on the internet. La. R.S. 15:542(C)(1)(m); *State v. Dominick*, 16-733 (La. App. 5 Cir. 5/17/17), 222 So. 3d 956. An offender is required to give notice before any online identifier or static internet protocol address is used to communicate on the internet. La. R.S. 15:542(C)(1)(m). Molestation of a juvenile is a sex offense as defined in La. R.S. 15:541(2)(l).

La. R.S. 15:540, *et seq.* does not include a definition for the term "communicate." "Unequivocal provisions are not subject to judicial construction and should be applied by giving words their generally understood meaning." *State v. Turner*, 18-0780 (La. 5/8/19), 283 So. 3d 997, *quoting State v. Oliphant*, 12-1176 (La. 3/19/13), 113 So. 3d 165. The principle of lenity "directs that a court construe a criminal statute in favor of the most-narrow application when there are serious doubts concerning a meaning of a term." *State v. Turner*, *supra*, *quoting State v. Kitchie*, 590 So. 2d 1139 (La. 1991).

The word "communicate" is defined by Merriam-Webster's Dictionary as "to convey knowledge or information about; make known; to transmit information, thought, or feeling so that it is satisfactorily received or understood." Within the meaning of La. R.S. 15:542(C)(1)(m), there is no doubt as to the meaning of "communicate." The dictionary definition of the term is applicable under the statutory scheme which governs sex offender registration, La. R.S. 15:540, *et seq.* Sex offenders are meant to provide law enforcement with any online identifiers and email addresses, regardless of whether those identifiers are used to contact others online. A Facebook account is exactly the type of online identifier/account that an offender is required to disclose to law enforcement.

In the case *sub judice*, the state proved that Defendant committed a sex offense, i.e. molestation of a juvenile, for which he was required to register as a sex offender. He acknowledged that he is required to register as a sex offender several times a year in Caddo Parish. The state also proved, through Defendant's 2017 sex offender registration contract, that he failed to provide law enforcement with the Facebook account information and email address he used in connection with the account. He admitted that he used the account, and that he was the only person who had access to the username and password. The printout of the account page shows his photo and that he has "friends" and "followers." He used the account to "convey knowledge or information" about himself, even if he did not make posts to his Facebook page. The evidence is sufficient here for a conviction of failure to register as a sex offender.

This assignment of error is without merit.

*Excessive sentence*

Defendant argues that the sentence imposed, despite being the minimum sentence provided by statute, was unconstitutionally harsh and excessive given his long history of registering and the lack of any aggravating circumstances. He asserts that the facts of this case and his personal history do not support a sentence of two years. He claims that the trial court should have considered as a mitigating factor that he has registered as a sex offender for the past 20 years; and, for that reason, the minimum mandatory sentence for this offense as it applies to him is unconstitutionally harsh and excessive.

The state argues that since Defendant did not file a motion to reconsider sentence, appellate review is limited to whether his sentence is constitutionally excessive. It contends that the trial court did not abuse its discretion by imposing the most lenient sentence allowed under the law.

Defendant did not file a La. C. Cr. P. art. 881.1 motion to reconsider sentence; therefore, appellate review is limited to the bare claim that the sentence is constitutionally excessive. *State v. Mims*, 619 So. 2d 1059 (La. 1993). A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Benson*, 53,578 (La. App. 2 Cir. 11/10/20), 305 So. 3d 135. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La.1/15/02), 805 So. 2d 166.

The trial court has wide discretion in imposing sentence within the statutory range. *State v. Benson*, *supra*. A sentence will not be set aside as excessive unless the defendant shows that the trial court abused its discretion. *Id*. The reviewing court does not determine whether another sentence would have been more appropriate, but whether the trial court abused its discretion. *Id*.

A person who fails to provide the required information by the provisions of the sex offender registration laws shall be fined not more than one thousand dollars and imprisoned with hard labor for not less than two years nor more than ten years without benefit of parole, probation or suspension of sentence. La. R.S. 15:542.1.4.

For the instant offense, Defendant faced a sentencing range of two to ten years and a potential fine of up to $1,000. He did not file a motion to reconsider sentence, so he is limited to a claim of excessive sentence. Defendant received the minimum sentence allowed under the law, i.e., two years at hard labor without benefits; he did not receive a fine. It is difficult to see how the trial court abused its discretion in sentencing him to the minimum sentence required by law. Considering the facts as presented on this record, the chosen minimum punishment is adequately tailored to this defendant and does not shock the sense of justice.

This assignment of error lacks merit.

## CONCLUSION

For the foregoing reasons, the conviction and sentence of Defendant Ronald Keith Berry are affirmed.

**AFFIRMED.**

13