CARAWAY, J.
 

 | T Samuel Lynn Speed was convicted by a jury of aggravated second degree battery, in violation of La. R.S. 14:34.7, and adjudicated a second felony habitual offender. He received a sentence of 16 years at hard labor without benefit of probation, parole or suspension. Speed appeals his conviction and sentence. We affirm the conviction and, as amended, affirm the sentence.
 

 Facts
 

 On March 9, 2006, at approximately 1:00 a.m., Sheteda Johnson was asleep in the home she occupied with her three children and Samuel Speed, her boyfriend. Johnson was sleeping alone in her bedroom when she was awakened by the feel of something hot on her skin. She jumped out of bed and ran into the hallway screaming, attempting to remove her shirt to get the hot substance, which was later identified as grease, away from her skin. Johnson ran in one direction down the hallway, but turned and ran toward her children’s bedroom, which was next door to her bedroom. The children were attempting to exit the room as Johnson tried to enter it. They saw the injuries to their
 
 *585
 
 mother and took her across the street to Johnson’s mother’s house, where an ambulance was called. Speed was standing in the hallway where the bedrooms were located during some portion of these events. He made no move to help the victim or to contact emergency services for her.
 

 The victim was taken to the hospital where she was diagnosed with second and third degree burns on her face, back, shoulders and right hand. For six to seven months following the incident, the victim made regular | ¡¡visits to a doctor to check her injuries. She lived with her mother for two to three months following the incident because she needed help bathing and changing her bandages. During her trial testimony, Johnson was asked to remove her shirt so that she could show the jury the extent of her injuries. Despite defense counsel’s objection, the victim was permitted to do so.
 

 Johnson testified that she loved Speed and believed that he did not intend to hurt her. She stated that the state pursued the charges against her will. Johnson testified that Speed claimed he had tripped over something on the bedroom floor, accidentally spilling the grease on her. Johnson also testified that she believed Speed when he told her that he was taking the hot grease to throw it in the commode in the bathroom. The grease had been sitting on their stove in the kitchen. She acknowledged, however, that there was no bathroom in her bedroom and it would have been unnecessary for the defendant to enter that room to throw hot grease into the commode. She also admitted that the grease had been solidified when she had earlier asked Speed to dispose of it. Johnson testified that anyone coming from the kitchen would pass the bathroom before getting to the bedroom where she slept. Johnson also admitted that she and Speed had a “discussion” several weeks before the incident in which Speed accused her of having an affair.
 

 On cross-examination, Johnson testified that the incident could have been an accident, although she wondered why he had come into her room with hot grease. She admitted giving a statement in an affidavit concerning her belief that the incident was an accident. She also stated in the affidavit that she had forgiven Speed and wanted him to go on with his life.
 

 | ..¡Officer Chad Dailey of the Shreveport Police Department investigated the incident and spoke briefly to Johnson as she was being treated in the ambulance. He believed her to be in shock when he spoke to her, but she told him that “while she was sleeping her live-in boyfriend had thrown hot grease on her while she was sleeping in the bed.” Dailey also spoke to the victim’s neighbor, Jesse Ray Murray. Dailey testified regarding what Murray told him as follows:
 

 he stated that over the past several days he had had a couple of conversations with the defendant in which the defendant had told Mr. Murray that he felt like the victim was having an affair on him. And Mr. Murray said that the defendant had said that a few days prior he had a pot of boiling water on the stove and was waiting for her to come home and he was going to throw the water on her. Mr. Murray told me he was able to talk him out of that incident.
 

 Dailey was later called on the morning of the crime, and told that Speed was at the patrol desk to turn himself in.
 

 Jean Johnson, Johnson’s mother, testified that her doorbell rang at approximately one in the morning and when she answered it her daughter was “standing there with her arms away from her like this and she was covered in oil.” Jean Johnson further testified that her daugh
 
 *586
 
 ter said, “Why did he do this to me?” She knew her daughter was referring to Speed.
 

 Finally, Jesse Ray Murray, the neighbor of Johnson and Speed, was called to testify. Murray did not witness the incident, but walked outside after he heard the arrival of the ambulance. Murray had spoken to the defendant a couple of days before the incident. Murray described the conversation as follows:
 

 Q: What did Samuel Speed tell you about Sheteda?
 

 |4A: Well, came over and said something was going on, you know, with her.
 

 Q: Okay. If you could be specific to the ladies and gentlemen of the jury as to what he said.
 

 A: He was saying that something is going on, I think he had just got out the hospital or something. Anyway he said that what he was going to do was get him some hot water and throw on her.
 

 Q: Okay. Did he say why he was going to do that?
 

 A: Well, what he said was cause I think it’s some kind of fidelity (sic) between her and some other guy cheating or something there going on
 

 * * ⅜
 

 Well, he said he had some hot water on the stove at that present time that he was going to throw on her whenever she came back to the house.
 

 [[Image here]]
 

 Okay. What I told him was, I said, man, look, if it’s that bad what you need to do is get your stuff and leave.
 

 Murray indicated that a similar discussion between Speed and himself also occurred the next day.
 

 When asked on cross-examination why Murray did not tell Johnson or her mother about the threats made by Speed, Murray responded:
 

 Well, because I felt that it was enough— it wasn’t enough to we — hadn’t nothing really happened. People will talk when they angry, upset, so I took it for granted that that’s more or less, course see, I wasn’t going to get really going to get involved in it cause, see, they could have just went on back home tonight and made it up and got up and forgot all about it. [sic ]
 

 Murray was also asked repeatedly about an incident involving Speed’s dog. Murray testified that Speed and Johnson were out of town between 3 and 6 months before the present incident and their dog got out of their backyard and attempted to attack him. Murray shot once at the ground near the dog, but it kept advancing on him, so he shot and killed the dog. He then notified Speed and Johnson.
 

 Is A six-person jury unanimously found Speed guilty as charged of aggravated second degree battery on March 22, 2007. Motions for new trial and post-verdict judgment of acquittal were subsequently filed and denied by the court. The state filed a habitual offender bill of information and the district court adjudicated Speed a second felony offender.
 

 At the end of the habitual offender proceeding and prior to sentencing, Johnson, Merita Starks, Speed’s daughter, and Speed testified. After hearing testimony from these witnesses regarding the accidental nature of the incident and the hardship that Speed’s incarceration would cause, the trial court subsequently sentenced the defendant to 16 years at hard labor without benefit of probation, parole or suspension of sentence. Speed appeals his conviction and sentence.
 

 
 *587
 

 Discussion
 

 Speed argues that the evidence was insufficient to support his conviction because the state failed to prove he had the requisite intent to commit a battery upon the victim. Speed contends that there were no eyewitnesses to the incident and that Johnson believed the incident was accidental. Speed urges that Murray’s testimony was unreliable because Murray could not remember certain events and there was tension in the relationship between Speed and Murray after Murray shot his dog.
 

 The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979);
 
 State v. Tate,
 
 01-1658 (La.5/20/03), 851 So.2d 921,
 
 cert. denied,
 
 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004);
 
 State v. Cummings,
 
 95-1377 (La.2/28/96), 668 So.2d 1132;
 
 State v. Murray,
 
 36,137 (La.App. 2d Cir.8/29/02), 827 So.2d 488,
 
 writ denied,
 
 02-2634 (La.9/05/03), 852 So.2d 1020. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder.
 
 State v. Pigford,
 
 05-0477 (La.2/22/06), 922 So.2d 517;
 
 State v. Robertson,
 
 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence.
 
 State v. Smith,
 
 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part.
 
 State v. Hill,
 
 42,025 (La.App. 2d Cir.5/9/07), 956 So.2d 758,
 
 writ denied,
 
 07-1209 (La.12/14/07), 970 So.2d 529;
 
 State v. Gilliam,
 
 36,118 (La.App. 2d Cir.8/30/02), 827 So.2d 508,
 
 writ denied,
 
 02-3090 (La.11/14/03), 858 So.2d 422.
 

 The
 
 Jackson
 
 standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable |7doubt that defendant was guilty of every essential element of the crime.
 
 State v. Sutton,
 
 436 So.2d 471 (La.1983);
 
 State v. Parker,
 
 42,311 (La.App. 2d Cir.8/15/07), 963 So.2d 497;
 
 State v. Owens,
 
 30,903 (La.App. 2d Cir.9/25/98), 719 So.2d 610,
 
 writ denied,
 
 98-2723 (La.2/5/99), 737 So.2d 747. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience.
 
 State v. Robbins,
 
 43,129 (La.App. 2d Cir.3/19/08), 979 So.2d 630. A conviction based upon circumstantial evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438.
 

 Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency.
 
 State v. Allen,
 
 36,180 (La.App. 2d Cir.9/18/02), 828 So.2d 622,
 
 writs denied,
 
 02-2595 (La.3/28/03), 840 So.2d 566, 02-2997 (La.6/27/03), 847 So.2d 1255,
 
 cert. denied,
 
 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
 

 
 *588
 
 The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law.
 
 State v. Casey,
 
 99-0023 (La.1/26/00), 775 So.2d 1022,
 
 cert. denied,
 
 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000).
 

 |sLa. R.S. 14:34.7 defines aggravated second degree battery as a battery committed with a dangerous weapon when the offender intentionally inflicts serious bodily injury. The statute defines serious bodily injury as bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.
 

 Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Second degree battery is a specific intent crime.
 
 State v. Fuller,
 
 414 So.2d 306 (La.1982);
 
 State v. Hunter,
 
 36,-692 (La.App. 2d Cir.12/20/02), 834 So.2d 6. The evidence must show that the defendant intended to inflict serious injury.
 
 Id.
 
 Likewise, aggravated second degree battery is also a specific intent crime.
 
 State v. Lee,
 
 07-1404 (La.App. 3d Cir.5/7/08), 2008 WL 1961152;
 
 State v. P.M.,
 
 00-1613 (La.App. 3d Cir.5/2/01), 786 So.2d 857. Although intent is a question of fact, it need not be proven as a fact; instead, it may be inferred from the circumstances of the transaction.
 
 State v. Fuller,
 
 414 So.2d at 310.
 

 In this ease, there is no dispute that it was Speed who poured hot grease on Johnson while she slept in their home. The sole issue is whether the state presented proof beyond a reasonable doubt that Speed had the requisite specific intent to inflict seriously bodily injury. Only the defendant, who exercised his right not to testify, observed how Johnson was burned by the grease. Therefore, the state’s case rests upon circumstantial | flevidence. At trial, Johnson could only state that it was a possibility that the incident was an accident, adding “anything is possible.” After the incident, Johnson immediately made statements to her mother questioning why Speed would do this to her, and thus suggesting his intentional criminal motive. She admitted that Speed was disturbed over the possibility of her having an affair and had accused her of doing so weeks prior to the incident. These facts corroborate Murray’s testimony that Speed accused Johnson of having an affair in the two days prior to the incident and had planned to throw hot water on her before Murray talked him out of it. If believed, Murray’s testimony establishes that Speed exhibited a pattern of behavior in seeking to hurt Johnson in retaliation for the alleged affair.
 

 The circumstantial evidence also refutes Speed’s claim of intending to dispose of the hot grease in the bathroom. His asserted actions of heating cold crease at 1:00 a.m. and carrying the hot grease down a hallway into a room where there was no bathroom, are beyond belief. This accidental scenario is also belied by Speed’s failure to assist Johnson at the time of the incident and his departure from the scene.
 

 From this evidence, the jury could have reasonably inferred that Speed intentionally poured hot grease on Johnson in retaliation for the alleged affair with the specific intent to inflict serious bodily injury. When viewed in the light most favorable to the prosecution, a rational trier of fact could have rejected Speed’s claims of an accident as unreasonable and found the
 
 *589
 
 essential elements of the crime proven beyond a reasonable doubt. This assignment of error is without merit.
 

 ImSpeed next argues that his conviction should be reversed and remanded for new trial because it is unclear whether 6 or 12 jurors were actually empaneled. Speed contends that the March 20, 2007, trial court minutes state that previously accepted jurors, “made a jury of twelve (12) good and true persons.... ”
 

 Although Speed correctly points out the above-noted minute entry, the record also reflects that the minute entry on the date of the verdict states that the jury was polled and all
 
 six jurors
 
 indicated their vote. Further the record minutes have been modified. The original March 20, 2007 minutes contain a handwritten “X” through the entry with a handwritten note stating, “see page 5A for corrected minutes.” Page 5A of the record contains a single entry dated March 20, 2007 which corrects the erroneous reference to twelve jurors.
 

 Finally, the trial transcript reflects that six jurors were polled. Where there is a discrepancy between the minutes and the transcript, the transcript prevails.
 
 State v. Lynch,
 
 441 So.2d 732 (La.1983). With the corrected minutes contained in the record, and the transcript reflecting that a six-person juror convicted Speed, we find no merit to this argument.
 

 Speed next argues that the jury charges contained in the record erroneously state that “general intent” is required to be found in order to convict the defendant of aggravated second degree battery, aggravated battery, second degree battery and simple battery.
 

 The record before us shows that during the jury charge conference, the state objected to the proposed jury charges on the grounds that “none of Inthe charges are specific intent crimes.” The court noted, “That’s correct,” and the written charge ultimately gave the following instruction:
 

 I instruct you that general criminal intent is an essential element of Aggravated Second Degree Battery, Aggravated Battery, Second Degree Battery and Simple Battery.
 

 Defense counsel lodged no objection to the instruction and the final charge read to the jury is not part of the transcript of the appellate record.
 

 Proof of specific intent is required where the statutory definition of a crime includes the intent to produce or accomplish some prescribed consequence.
 
 State v. Fuller, supra; State v. Elliot,
 
 00-2637 (La.App. 1st Cir.6/22/01), 809 So.2d 203.
 
 [1]
 
 Serious bodily injury is the intended harm for the crime of second degree battery.
 
 State v. Fuller, supra.
 
 Therefore, the defendant’s crime of conviction was a specific intent crime.
 

 La.C.Cr.P. art. 801 sets out the procedure for challenging jury instructions in subpart C, as follows:
 

 A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error. The nature of the objection and grounds therefor shall be stated at the time of the objection. The court shall give the party an opportunity to make the objection out of the presence of the jury.
 

 
 *590
 
 Generally, a party may not assign as error a complaint to a jury charge in the absence of a contemporaneous objection.
 
 State v. Belgard,
 
 410 So.2d 720 (La.1982);
 
 State v. Wilson,
 
 28,403 (La.App. 2d Cir.8/21/96), 679 So.2d 963.
 
 See also State v. Hongo,
 
 96-2060 (La.12/2/97), 706 So.2d 419, fn. 3 at p. 422. An invalid instruction on the elements of an offense is not a structural error and is therefore subject to harmless error review and only warrants reversal when the defendant is actually prejudiced by the error.
 
 State v. Hongo, supra; State v. Woods,
 
 00-2147 (La.App. 1st Cir.5/11/01), 787 So.2d 1083,
 
 writ denied,
 
 01-2389 (La.6/14/02), 817 So.2d 1153. An invalid instruction on the elements of an offense is harmless if the evidence is otherwise sufficient to support the jury’s verdict and the jury would have reached the same result if it had never heard the erroneous instruction.
 
 State v. Hongo, supra.
 
 The determination is based upon whether the guilty verdict actually rendered in this trial was surely unattributable to the error.
 
 State v. Hongo, supra. See State v. Hollins,
 
 99-278 (La.App. 5th Cir.8/31/99), 742 So.2d 671,
 
 writ denied,
 
 99-2853 (La.1/5/01), 778 So.2d 587;
 
 State v. Page,
 
 96-227 (La.App. 5th Cir.8/28/96), 680 So.2d 104,
 
 writ denied,
 
 96-2543 (La.9/19/97), 701 So.2d 153, where the trial courts incorrectly instructed juries that an essential element of the charged crime was general intent for specific intent crimes. The appellate courts upheld the verdicts after observing that the courts had properly instructed the juries on the elements of the crime and determining that the evidence supported the convictions.
 

 In this case, because no contemporaneous objection was made by Speed to the jury charge, he is statutorily precluded from raising this issue on appeal. Moreover, considering the unique facts presented by this case, any error in the jury instruction is harmless and surely unattributable to the verdict. The jury in this case was correctly instructed on the definition of |1sthe crime of aggravated second degree battery. The crime is defined as a battery committed with a dangerous weapon when the offender intentionally inflicts serious bodily injury. Even with the incorrect instruction regarding general intent, the jury was correctly instructed by the definition of the crime that in order to convict Speed the evidence must show that he intentionally inflicted serious bodily injury, the prescribed conduct. Thus, the very definition of the crime necessitated a finding of specific intent and the jury could not have convicted Speed on an improper element.
 

 As noted above, the facts clearly indicate, to the exclusion of any reasonable hypothesis of innocence, that Speed intended to inflict serious bodily injury upon Johnson through the act of throwing hot grease upon her person. Speed had discussed his desire to physically injure Johnson in like manner in the two days prior to the event, acted consistently with his comments on the night in question, and fled the scene without assisting Johnson. Thus, the evidence is otherwise sufficient to support the jury’s verdict and this argument is without merit.
 

 Speed next argues that the display of Johnson’s scarring in front of the jury prejudiced the jury and precluded an impartial review of the evidence.
 

 Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence as to the determination of the action more probable or less probable than it would be without the evidence. La. C.E. art. 401. All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, and the Constitution of
 
 *591
 
 | uLouisiana, the Louisiana Code of Evidence or other legislation. All evidence that is not relevant is inadmissible. La. C.E. art. 402. Relevant evidence may be excluded if the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, or waste of time. La. C.E. art. 403.
 

 As discussed at length above, an essential element of the crime of aggravated second degree battery is proof of serious bodily injury. Bodily injury includes bodily injury which involves extreme physical pain, or protracted and obvious disfigurement or a substantial risk of death. Here, through Johnson, the state sought to show the extent of pain, body scarring and disfigurement that resulted from the hot grease burns. Obviously such evidence is relevant to the state’s proof of the essential element of serious bodily injury and completed the story of the crime. For this reason, any prejudice to Speed was outweighed by the probative value of the evidence.
 

 Concerning his adjudication as an habitual offender, Speed also contends that the minutes of court used to prove his predicate conviction in the habitual offender proceeding were insufficient to show that the plea was free and voluntary. The state introduced at the habitual offender hearing the court minutes relating to the prior offense. Those minutes reflect that on February 9, 2004, Speed entered a plea of guilty to the charge of possession of a Schedule II drug and the “court informed the defendant of his constitutional rights as per
 
 Boykin v. Alabama
 
 Speed’s counsel objected to this evidence on the grounds that the evidence did not appear to be certified copies, namely because the documents did not have a seal on |1sthem. The court overruled the objection. Eventually, the state supplied originals of the documents and introduced them into evidence. Defense counsel offered no further objection to the evidence either in a written motion or by oral objection.
 

 La. R.S. 15:529.1 D(l)(b) provides in relevant part:
 

 A person claiming that a conviction or adjudication of delinquency alleged in the information was obtained in violation of the Constitutions of Louisiana or of the United States shall set forth his claim, and the factual basis therefor, with particularity in his response to the information. The person shall have the burden of proof, by a preponderance of the evidence, on any issue of fact raised by the response. Any challenge to a previous conviction or adjudication of delinquency which is not made before sentence is imposed may not thereafter be raised to attack the sentence.
 

 This provision requires affirmative evidence of a defect in the prior guilty plea. Otherwise, the presumption of regularity which attaches to the minutes of a prior guilty plea means that the trial court can assume a defendant received advice with respect to each of his Boykin
 
 [2]
 
 rights until he proves otherwise.
 
 State v. Clesi,
 
 07-0564 (La.11/2/07), 967 So.2d 488. Where the record does not contain a written objection to the multiple offender bill of information, any issue relating to the constitutionality of the plea is not preserved for appellate review unless an oral objection is made at the hearing.
 
 State v. Braziel,
 
 42,668 (La.App. 2d Cir.10/24/07), 968 So.2d 853;
 
 State v. Johnson,
 
 42,323
 
 *592
 
 (La.App. 2d Cir.8/15/07), 962 So.2d 1126;
 
 State v. Henry,
 
 36,217 (La.App. 2d Cir.8/14/02), 823 So.2d 1064.
 

 Because Speed did not raise his challenge to the previous guilty plea in either a written response to the bill or prior to the imposition of sentence, hfihe is precluded from raising this issue on appeal. Moreover, in proof of the previous conviction, the state introduced the bill of information containing the defendant’s fingerprints and the court minutes. Because Speed entered no evidence to contest the validity of the plea, the minutes stating that Speed was informed of his Boykin rights are presumed to be regular. The trial court properly assumed that Speed received the correct
 
 Boykin
 
 advice because he had not proven otherwise.
 
 State v. Clesi, supra.
 
 Thus, this argument is without merit.
 

 In his final assignments of error, Speed argues that the trial court failed to comply with the provisions of La.C.Cr.P. art. 894.1. Speed also contends that the imposed sentence is excessive and serves no legitimate purpose.
 

 After sentencing, Speed filed a motion to reconsider sentence on the grounds of constitutional excessiveness only. The failure to include a specific ground upon which a motion to reconsider may be based shall preclude the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review. La. C.Cr.P. art. 881.1;
 
 State v. Mims,
 
 619 So.2d 1059 (La.1993);
 
 State v. Masters,
 
 37,967 (La.App. 2d Cir.12/17/03), 862 So.2d 1121;
 
 State v. Duncan,
 
 30,453 (La.App. 2d Cir.2/25/98), 707 So.2d 164. Thus, Speed is precluded from arguing La.C.Cr.P. art. 894.1 noncompliance and is relegated to review of the bare claim of constitutional excessiveness.
 

 Regarding the excessiveness of the sentence, Speed argues that no evidence from his previous behavior suggests he would be likely to commit 117a similar offense. He also re-urges that the court should have given weight to the wishes of the victim in fashioning the imposed sentence and that because of his incarceration, she continues to be victimized as she has been financially ruined. Speed argues that a lesser period of incarceration, one near or at the minimum required by law, would meet the needs of society and the goals of punishment. Finally, Speed contends that the trial court erroneously restricted his eligibility for parole under La. R.S. 15:529.1.
 

 A sentence violates La. Const, art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering.
 
 State v. Smith,
 
 01-2574 (La.1/14/03), 839 So.2d 1;
 
 State v. Dorthey,
 
 623 So.2d 1276 (La.1993);
 
 State v. Bonanno,
 
 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice.
 
 State v. Weaver,
 
 01-0467 (La.1/15/02), 805 So.2d 166;
 
 State v. Lobato,
 
 603 So.2d 739 (La.1992);
 
 State v. Robinson,
 
 40,983 (La.App. 2d Cir.1/24/07), 948 So.2d 379;
 
 State v. Bradford,
 
 29,519 (La.App. 2d Cir.4/2/97), 691 So.2d 864.
 

 For Speed’s conviction and adjudication as a second felony habitual offender, he faced a maximum possible sentencing exposure of 30 years. In addition to the possession of cocaine offense for which he was habitually billed, Speed also had an unauthorized entry of an inhabited dwelling conviction in 1989. Despite the victim’s requests that Speed not serve jail time for the offense, the fact remains that Speed’s actions in pouring hot 11sgrease on another were an inhumane act of cruelty. Further, the evidence shows that his be
 
 *593
 
 havior was premeditated. Considering the egregious nature of the act and Speed’s criminal record, we find no constitutional error in the sentence which is appropriately tailored to this defendant.
 

 Speed correctly points out, however, that the trial court erroneously imposed the sentence without benefit of parole. La. R.S. 15:529.1 G provides that a sentence imposed under the habitual offender statute is to be served without benefit of probation or suspension of sentence only.
 
 State v. Tate,
 
 99-1483 (La.11/24/99), 747 So.2d 519. The underlying offense of conviction places no restriction on Speed’s parole eligibility so the court erroneously imposed the sentence without parole. Because the deletion of this portion of the sentence does not involve the exercise of judicial discretion, we amend the sentence to delete that portion denying Speed the benefit of parole.
 
 State v. Tate, supra.
 
 In all other respects, the sentence is affirmed.
 

 Conclusion
 

 For the foregoing reasons, Speed’s conviction is affirmed. The imposed sentence is amended to delete that portion of the sentence which denies parole eligibility, and, as amended is affirmed.
 

 CONVICTION AFFIRMED; SENTENCE AMENDED, AND AFFIRMED AS AMENDED.
 

 [1]
 

 . To the contrary, in general intent crimes, criminal intent necessary to sustain a conviction is shown by the very doing of the acts which have been declared criminal.
 
 State v. Heyward,
 
 94-0023 (La.6/3/94), 638 So.2d 216;
 
 State v. Holmes,
 
 388 So.2d 722 (La.1980).
 

 [2]
 

 . This notation is a reference to the case of
 
 Boykin v. Alabama,
 
 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).