Judgment rendered January 10, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,440-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                           Appellee

versus

SHAMICHAEL ANTONIO                           Appellant
PEARSON

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 387,871

Honorable Christopher T. Victory, Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By:  Chad Ikerd

JAMES E. STEWART, SR.                  Counsel for Appellee
District Attorney

SAMUEL S. CRICHTON
TOMMY JAN JOHNSON
Assistant District Attorneys

* * * * *

Before STONE, ROBINSON, and MARCOTTE, JJ.

**STONE, J.**

This criminal appeal arises from the First Judicial District Court, the Honorable Christopher T. Victory presiding. A unanimous jury found Shamichael Pearson ("defendant") guilty of second degree murder in violation of La. R.S. 14:30.1. The defendant received a sentence of life imprisonment without the possibility of parole.

The defendant now appeals his conviction, alleging that the state failed to sufficiently prove that he committed the murder. For the following reasons, we affirm the defendant's conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

On March 3, 2022, Devin Myers ("Devin") texted his mother, Shartarshea Myers ("Shartarshea"), asking if she could pick him up from school early. Given that Devin's seventeenth birthday was the day before, Shartarshea agreed to sign Devin out of school early. Shartarshea picked Devin up from school and dropped him off at their home on Lakeshore Drive. Shortly thereafter, Devin decided to visit his best friend, Jaylen Pennywell ("Jaylen"), at his home on Lillian Street, which is located near the rear of Devin's home.

While at Jaylen's home, Devin's cell phone battery was low, so he texted his girlfriend, Jer'miyah Cummings ("Jer'miyah"), to bring his cell phone charger. Jer'miyah texted Devin upon her arrival at Jaylen's home. Devin came outside and then walked to the passenger side of Jer'miyah's vehicle. As they were talking, a pedestrian walked by the driver's side of her vehicle and came around to the passenger side to address Devin. Devin and Jer'miyah heard the pedestrian say, "didn't I tell you when I seen you, I was going to get you." Devin attempted to run away from the pedestrian but

was shot thirteen times and killed instantly. The shooter immediately fled the scene on foot.

When the police arrived on the scene, they learned from Jer'miyah, the only witness to the murder, that the shooter was "light-skinned with dreads and possibly had freckles." Jer'miyah also stated that the shooter was wearing an off-green or olive-green hoodie and a ski mask. She also recalled that the shooter's pistol looked like a glock. Jer'miyah explained that Devin did not have any weapons on him, nor did he have a chance to say anything to her or the shooter before being shot. Once questioned, Jaylen told police that he heard the gunshots and came out of his house to find Devin lying face down on the ground. However, Jaylen told police that he did not see the shooter.

During Shartarshea's initial statements to the responding officers, she explained that she was at home when she heard the gunshots and that she immediately looked out the window because they sounded very close. Shartarshea told officers that while looking out the window, she saw the defendant entering his residence through the backdoor wearing a brown jacket pulled over his head, a black shirt, and black pants. She further explained that she received a call from Jer'miyah explaining that Devin had been shot. After learning that her son had been shot, she stated that she immediately ran through her backyard toward Jaylen's house and found Devin lying on the ground. Shartarshea mentioned to officers that upon finding her son, she screamed "Mike," the defendant's nickname, because she was certain that he was the person who shot her son. She expressed to police that the defendant and a man named Josh had allegedly shot at Devin during a drive-by shooting and that she had reported the incident a few

months earlier. Officers also located another witness, Eric Tramiel ("Eric"), a guidance counselor at the nearby charter school, who heard the gunshots. Eric told police that less than two minutes after hearing the gunshots, he observed an individual walking toward Lakeshore Drive wearing "a black hoodie with a brown overhang that resembled a sweater." Eric stated that he did not see this individual wearing a mask but observed him walk into the defendant's home on Lakeshore Drive. At this point in the investigation, the detectives developed the defendant as a suspect and obtained a search warrant for the defendant's home.

During the search of the defendant's home, detectives recovered a Glock 17 along with two magazines inside a deep freezer in the kitchen. At trial, Christopher Madere ("Madere"), a forensic DNA expert from the North Louisiana Crime Lab, testified that the DNA swabs taken from the trigger of the Glock 17 contained the DNA of the defendant.[1] Furthermore, the firearms section supervisor of the North Louisiana Crime Lab, Phillip Stout ("Stout"), testified that the shell casings and projectiles found at the scene of the crime were fired from the Glock 17 that was found in the freezer at the defendant's home. Detectives also seized the defendant's cell phone along with an olive green hoodie that matched the description of the hoodie that Jer'miyah stated that the shooter was wearing. These items were also introduced into evidence at trial.

---

[1] Madere testified that "the DNA profile from the swabs was consistent with being a mixture from at least three individuals: [t]wo major contributors and one minor contributor," and he determined that the defendant could not be excluded as part of the major contributor. Madere further explained that for a mixture of two major contributors, the probability is expressed as a statistical likelihood. In this particular case, Madere concluded that "... the DNA profile from the major contributors from the swabs was 18.6 million times more likely to be a mixture of DNA from Shamichael Pearson and an unknown, unrelated individual than a mixture of DNA from two unknown, unrelated individuals."

During the investigation, Corporal McEntee ("Cpl. McEntee") was advised by a colleague that the defendant was employed at the Piggly Wiggly supermarket. Cpl. McEntee obtained a video from the Piggly Wiggly that depicted both the defendant and his mother arriving to work at approximately 6:50 AM and the defendant leaving work at approximately 12:12 PM. Both videos show the defendant in the same clothing described by Jer'miyah. The manager on duty at the Piggly Wiggly explained to Cpl. McEntee that their surveillance cameras were approximately seven minutes fast and that the defendant clocked out closer to 12:05 PM and not 12:12 PM. The defendant's cell phone activity also revealed that he walked .4111 miles, which is the approximate distance between the Piggly Wiggly and the crime scene on Lillian Street, around the same time as the homicide. Detectives also gathered video surveillance footage from a home on Lillian Street, which shows an individual in a brown hoodie, black pants, and black shoes around 12:10 PM walking down Lillian Street toward the crime scene. Shortly after the individual exits the frame, two volleys of gunshots can be heard in the video. The individual in the home security video footage was dressed in the same clothing that the defendant wore that day, as evidenced by the Piggly Wiggly surveillance footage.

On June 22, 2022, a grand jury indicted the defendant for the second degree murder of Devin Myers, and a jury trial commenced on March 6, 2023. On March 9, 2023, a unanimous jury found the defendant guilty of second degree murder. On March 16, 2023, the defendant filed a motion for post-verdict judgment of acquittal, which the trial court denied. The defendant was sentenced on March 27, 2023. This appeal followed.

**DISCUSSION**

The defendant argues that the state presented insufficient evidence at trial to sustain a conviction for second degree murder. Specifically, the defendant argues that the state failed to prove he was the shooter. He asserts that Jer'miyah was the only witness who testified to seeing the shooter, and she could not identify him as the shooter to the police or at trial. He also argues that every other witness simply heard gunshots or saw a person walking into the defendant's home after the shooting. Furthermore, the defendant maintains that the "activity sensor" on his cell phone did not exclude the possibility that he was on a completely different street at the time of the shooting. He further explains that the DNA on the trigger of the handgun was based on assumptions made by a forensic analyst and is, therefore, misleading and insignificant. More importantly, the defendant asserts that even assuming that his DNA was on the gun, the evidence offered at trial does not prove that he was the actual shooter.

The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004); *State v. Ward*, 50,872 (La. App. 2 Cir. 11/16/16), 209 So. 3d 228, *writ denied*, 17-0164 (La. 9/22/17), 227 So. 3d 827. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the factfinder. *State v. Ward*, *supra*; *State v.*

*Dotie*, 43,819 (La. App. 2 Cir. 1/14/09), 1 So. 3d 833, *writ denied*, 09-0310 (La. 11/6/09), 21 So. 3d 297. On appeal, a reviewing court must view the evidence in the light most favorable to the prosecution and must presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence. *Jackson*, *supra*.

The appellate court does not assess the credibility of witnesses or reweigh evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442; *State v. Ward*, *supra*. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. *State v. Ward*, *supra*; *State v. Eason*, 43,788 (La. App. 2 Cir. 2/25/09), 3 So. 3d 685, *writ denied*, 09-0725 (La. 12/11/09), 23 So. 3d 913. In the absence of internal contradiction or irreconcilable conflict with the physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. *State v. Burd*, 40,480 (La. App. 2 Cir. 1/27/06), 921 So. 2d 219, *writ denied*, 06-1083 (La. 11/9/06), 941 So. 2d 35.

The *Jackson* standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. *State v. Sutton*, 436 So. 2d 471 (La. 1983); *State v. Ward*, *supra*; *State v. Speed*, 43,786 (La. App. 2 Cir. 1/14/09), 2 So. 3d 582, *writ denied*, 09-0372

6

(La. 11/06/09), 21 So. 3d 299.  To convict a defendant based upon circumstantial evidence, every reasonable hypothesis of innocence must be excluded.  La. R.S. 15:438; *State v. Barakat*, 38,419 (La. App. 2 Cir. 6/23/04), 877 So. 2d 223.

"Second degree murder is the killing of a human being when the offender has a specific intent to kill or inflict great bodily harm." La. R.S. 14:30.1.

After reviewing the record and viewing the evidence in the light most favorable to the prosecution, we find that the state presented sufficient evidence at trial for a reasonable jury to convict the defendant of second degree murder.  The jury was shown surveillance footage from the defendant's job at the Piggly Wiggly, showing the clothing he wore to work on the day of the murder.  The footage also showed the defendant leaving work wearing the same clothing several minutes before the shooting.  Detectives were also able to obtain the defendant's geolocation data, which revealed that he walked .4111 miles after work — the approximate distance between the Piggly Wiggly and the crime scene.  The jury was presented with video surveillance footage from a home on Lillian Street, which shows the defendant walking down Lillian Street toward the crime scene minutes before the murder.  In that same video, you can hear several gunshots shortly after the defendant exits the frame.  The jury heard the testimony of Jer'miyah, the only witness to the murder, who stated that the shooter was wearing the same clothes that the defendant was wearing that day.  In addition, Devin's mother, Shartarshea, testified that she saw the defendant walk into his home immediately after the shooting in clothes matching the description of the shooter.  This was also corroborated by Eric, who saw

7

someone matching the description of the shooter walking into the defendant's home after he heard several gunshots. Moreover, the murder weapon was found in the defendant's home inside a deep freezer, and the trigger contained the defendant's DNA. A firearms expert from the North Louisiana Crime Lab also explained to the jury that the shell casings and projectiles found at the scene of the crime matched the gun that was found in the deep freezer at the defendant's home. Detectives also seized the defendant's hoodie that matched the description of the hoodie that Jer'miyah said the shooter was wearing. Therefore, the defendant's assignment of error is without merit.

## CONCLUSION

For the reasons set forth above, the conviction and sentence of the defendant is **AFFIRMED.**