Judgment rendered November 19, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,438-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA            Appellee

versus

GLADUE JOSEPH ISTRE A/K/A            Appellant
JOEY ISTRE

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 222,300

Honorable A. Parker Self, Jr., Judge

* * * * *

LOUISIANA APPELLATE PROJECT        Counsel for Appellant
By: Annette Fuller Roach

GLADUE JOSEPH ISTRE            Pro Se

LIZ MURRILL            Counsel for Appellee
Attorney General

J. SCHUYLER MARVIN
Assistant District Attorney

DARWIN C. MILLER
IRENA ZAJICKOVA
MICHELLE A. THOMPSON
Assistant Attorneys General

* * * * *

Before PITMAN, THOMPSON, and HUNTER, JJ.

**THOMPSON, J.**

Gladue Joseph Istre ("Istre") violently raped his wife and threatened to kill her if she told anyone about the rape. His wife bravely informed her attorney of the crime committed against her and has admirably testified multiple times about the brutality committed against her, including her divorce proceedings, this criminal matter arising from Bossier Parish, Louisiana, and in another criminal rape case against her husband, which later arose in St. Bernard Parish, Louisiana.

The jury unanimously convicted Istre of first degree rape of his wife and of witness intimidation for the threats against her. The trial court sentenced him to the mandatory sentence of life imprisonment for the first degree rape conviction, and 20 years at hard labor for the witness intimidation conviction. On appeal, the defendant argues that his convictions should be overturned because he could not adequately hear the proceedings, the jury was not properly instructed as to the specific intent required for witness intimidation, and he was denied counsel for the post-conviction proceedings. Finding these assignments of error to be without merit and for the reasons provided in greater detail below, we affirm the defendant's convictions and affirm his sentence to life imprisonment at hard labor without parol for first degree rape. Our error patent review reflects the trial court failed to wait the required 24-hour time period after denying the defendant's motion for new trial before sentencing him on his charges. While the mandatory life sentence for first degree rape would remain unchanged, Istre's conviction for witness intimidation, due to its sentencing range, must be vacated and this matter is hereby remanded for resentencing on the witness intimidation count pursuant to La. C. Cr. P. art 843 and so

that the defendant can be informed in writing that he must register as a sex offender pursuant to La. R.S. 15:543.

## FACTS AND PROCEDURAL HISTORY

We recognize at the outset that the publication of the testimony, evidence, and specific details about a savage attack could be tremendously hurtful, potentially embarrassing, and involve circumstances to which the victim in no way contributed. La. R.S. 14:42 First Degree Rape involves the anal, oral, or vaginal sexual intercourse without lawful consent of the victim committed when the victim resists the act to the utmost, but whose resistance is overcome by force. A description of the events, including the violent incidents of rape and the resistance by the victim, must necessarily be discussed within this opinion. Secondly, La. R.S. 14:129.1 Intimidating a Witness includes the threat of force or force, or attempt to intimidate or impede, by threat of force or force, a witness with intent to influence his testimony, his reporting of the criminal conduct, or his appearance at a judicial proceeding. For these reasons and other considerations, we shall refer to the innocent victim in this published opinion as "Jane."

The victim, Jane, developed a romantic relationship with Istre in 2017; they later married, and he moved into her home, which sits on 40 acres she used in connection with being a horse trainer and judging horse shows. Jane and Istre had a tumultuous relationship, and she reported to her friends that she was afraid of him.

On October 16, 2017, Jane came home from a horse show out of town and found Istre supervising work on her perimeter fence with some students he had hired. Istre grew angry, screamed and cursed at Jane, and dragged her into their home in front of the witnesses. Once in the home, Istre threw

2

Jane into a wall and choked her until she lost consciousness. Istre repeatedly vaginally and anally raped Jane, as she fought him, and he choked her, causing her to lose consciousness multiple times. When Istre left the ranch the next morning to run an errand, Jane drove to her attorney's office. She later testified that she went to the attorney, rather than the police, because of Istre's threats against her. Jane did not tell her attorney about the rape initially but did tell her that she was in trouble and needed help. She was later able to make Istre leave the property, obtained a restraining order against him, and filed for divorce.

In December 2017, when preparing for her divorce proceeding, Jane confided to her attorney about the rape because she knew she would be under oath during the proceeding and may be asked about the events giving rise to the divorce and restraining order. Jane testified during the divorce proceeding, and a divorce was immediately granted on the grounds of the abuse by Istre, and the restraining order remained in effect prohibiting Istre from contacting or abusing Jane.

Jane advised the police about Istre's attack, and he was indicted by a grand jury on December 18, 2020, of first degree rape and witness intimidation, in violation of La. R.S. 14:42 and 14:129.1, respectively. In the resulting criminal proceedings, Istre elected to represent himself, and the court appointed Mary Ellen Halterman of the public defender's office as his legal advisor.

Trial began on July 22, 2024. Jane testified that Istre would verbally belittle her during their relationship and that they had conflicts prior to the assault about the sale of a truck and Istre firing one of Jane's long-term employees. Jane testified she had called her friend, Lynn Walker

("Walker"), who was her attorney, and met her to talk about getting a divorce from Istre. Due to Istre's violent behavior, Jane and Walker discussed a code word for Jane to use in their conversations if Istre became violent. Jane testified that she also had a code word with her friend Debbie Roberts as well for when Istre was violent.

Jane testified that on the day of the assault, she had driven home from a horse show in Fort Worth, Texas to find Istre working on her fence with a group of young men. Jane was upset because Istre had torn down her perimeter fencing without her permission. Istre asked her how she liked the truck he had purchased, and she told him she did not like it, which caused Istre to grow upset and angry with her. Jane went into the house and began to unload her suitcase when Istre entered behind her and was acting extremely aggressively toward her. She told him not to touch her, and the next thing she knew, something hit her on the back of the head, and she fell forward and hit the wall.

Istre pulled her up by her hair, grabbed her hands in one of his hands, and shoved her head down on the counter. Jane testified she was kicking and fighting him. Istre unbuttoned her pants and began choking her, causing her to lose consciousness. When she woke up, he was vaginally raping her. She began to fight again, and he threw her face down on the bed, saying, "you fucking bitch, you like it like this." Jane testified that he choked her again, and she again lost consciousness. When she regained consciousness, Istre was raping her anally. She testified that it hurt, and she was kicking and fighting him. Jane testified that Istre told her, "Take that you fucking bitch." She testified she fought until she lost consciousness once again. When she woke up this time, she was on the ground and Istre was standing

4

above her.  He told her that "he knew I liked it rough."  She testified that she was fighting for her life, and she was overcome by force.

Jane testified that she crawled to the bathroom, went into the closet there, and locked the door.  Her phone remained in her purse, which was in her bedroom, but she was too scared to go back into the bedroom to retrieve it.  She stayed all night in the closet and testified that while she was in the closet Istre told her, "that he knew I liked it rough, and if I ever told anybody nobody [sic] would believe me because he's a cop.  And that if he ever—if I ever told anybody, that he would kill me."  She believed that he would kill her and that he was attempting to stop her from reaching out to anyone about what had happened.  Jane testified that Istre also told her, "he knew how to hide a body, and that the people at home would think I was judging (a horse show) and until I didn't show up to judge nobody would know I was missing."

Jane testified she remained in the closet for eight to ten hours that night and that when she left the closet, she found Istre in the recliner in the living room.  When she entered the room Istre smiled at her as if nothing had happened, and he put his arm around her and made her go outside with him to look at the fence.  Jane testified that she believed he was trying to keep her from going outside alone.  When he took her outside, she testified that she made eye contact with one of the teenagers helping to build the fence, and she could tell that he knew something was wrong.  To distract Istre, one of the teenaged workers told him that he needed something from the store, and they left together.  Once Istre had left, Jane grabbed her purse, got in her truck, and went immediately to her lawyer's office.  Jane testified that she did not go to the police because Istre had threatened to kill her if she told

5

anyone about the rape, and she believed him and was frightened for her life. Jane told Walker that she was in trouble and needed help but did not tell her that Istre had hurt her at that time, fearing for her safety and of Istre's threats.

Jane filed the petition for divorce that same day and then went home. Istre was at the house when she returned. Jane armed herself with a pistol and told Istre he had to leave. Istre packed his things and left the house. After he returned to the property and left her a note, Jane got security cameras, changed the locks, got an alarm, and got a restraining order against him. Despite the restraining order prohibiting contact, Istre continued to violate it by emailing Jane. As the hearing date for the divorce proceeding approached, Jane, knowing she would be asked under oath about the reason for the separation, told Walker about the rape. That information was provided to law enforcement, and the charges against Istre soon followed. On cross-examination during the criminal trial, Jane stated that she had recently testified in St. Bernard Parish, Louisiana in a rape case against Istre, in which he was convicted.

Debbie Roberts ("Roberts") testified at trial that she is friends with Jane and that she met Istre when they were dating and did not like him. She testified that he bragged about being a soldier overseas and knowing how to kill people. Roberts testified that Jane told her she feared for her life and that Istre had threatened to kill her. She believed Jane when she described the rape.

Robert Lambert ("Lambert") testified that he worked at Jane's farm and was hired by Istre when he was 20 years old. He testified Istre was rude and unpredictable. Lambert testified that Istre was frequently seen in the

6

presence of guns and that he witnessed Istre push a former female employee to the ground when she demanded to be paid.

Lambert testified that the day after the rape occurred, he was on the farm working when Istre aggressively dragged Jane out of the house. Lambert testified that Jane was clearly scared and upset. He testified that he knew he had to help Jane. He took Istre to the gas station to get him away from the house. Lambert testified he was fearful for himself and for Jane. He texted Jane and told her to leave while Istre was away from the ranch. He testified that even after Istre was gone, he remained fearful of him and knew that Jane was fearful of him.

Lynn Walker testified that she is Jane's lawyer and that Jane came to her fearful of Istre and seeking a divorce. She affirmed Jane's timeline and testimony about her fear of Istre, her divorce proceedings, and when she reported the rape. The State then rested its case.

Acting as his own counsel, Istre called Sgt. Anthony Pessen with the Bossier Parish Sheriff's Office, who testified that he investigated the simple battery by Istre against the female employee. Next, Istre called Lt. Cesar Mora of the Benton Police Department, who testified that he wrote an amendment to the report by the female employee. Istre then called Detective Kelly Downey with the Bossier Parish Sheriff's Office, testified that she prepared the report of the rape by Jane. Special Agent Paul Bourque with the State Attorney General's Office was then called to testify, and he confirmed Istre used to be a part of the Jefferson Parish Sheriff's Office intelligence division. Finally, Istre called James Brown to testify that he used to work at Rountree Ford, where Istre purchased the truck at issue between him and Jane. Istre elected not to testify in his own defense, and

the defense rested. There were no objections to the jury charge and after closing arguments the matter was submitted to the jury to render its verdict.

On July 25, 2024, the jury unanimously found Istre guilty on both counts. On August 7, 2024, Istre filed several pro se motions, including a motion to withdraw from self-representation and have Mary Ellen Halterman reinstated as counsel of record. The court held a hearing on all pending motions and noted that Ms. Halterman was recovering from a medical procedure and was not available to represent Istre. The court had Mike Miller, the chief public defender for Bossier Parish, stand in as Istre's legal advisor. After denying Istre's motions, the court sentenced him to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence on the rape count, and to 20 years at hard labor without benefit of parole, probation, or suspension of sentence on the witness intimidation count, with the sentences to run consecutive to Istre's separate 15-year sentence for second degree rape in St. Barnard Parish. This appeal followed.

## DISCUSSION

Istre asserts three assignments of error, which will be discussed below.

**First Assignment of Error: The trial court erred in failing to make the appropriate accommodations to assure that Joey Istre was able to hear all of the court proceedings.**

Istre first contends that the trial court erred in failing to ensure that he could hear all of the trial proceedings. The record reflects that in an early proceeding, Istre informed the trial court he was having difficulty hearing, and the trial court provided him with hearing aids in the form of headphones connected to the courtroom sound system, which are also sometimes referred

8

to as "TV ears." Istre now contends, after the trial and for the first time, that he continued to struggle to hear the proceedings, although neither he nor his advisory counsel alerted the trial court at any time during the trial that he was having any difficulties. Istre notes that he requested his cellmate be allowed to sit with him during trial, which was denied by the trial court. Regarding criminal defendants with hearing impairments, La. R.S. 15:270(A) provides:

> In all criminal prosecutions, where the accused is deaf or severely hearing-impaired, he shall have the proceedings of the trial interpreted to him in a language that he can understand by a qualified interpreter appointed by the court. In all cases where the mental condition of a person is being considered and where such person may be committed to a mental institution, and where such person is deaf or severely hearing-impaired, all of the court proceedings pertaining to him shall be interpreted by a qualified interpreter appointed by the court. The qualification of an interpreter as an expert witness is governed by the Louisiana Code of Evidence.

In *State v. Barber*, 617 So. 2d 974 (La. App. 4 Cir. 1993), the court found that the trial court was required to appoint an interpreter and not proceed until the interpreter was present in court for a hearing-impaired defendant. However, in that case, the record was clear that the defendant had severe hearing impairment. For example, that defendant could not answer questions presented to him and testified that he had learned to read lips and could understand sign language.

The defendant in *Barber*, *supra*, can clearly be differentiated from Istre in the present matter. Here, the record reflects that Istre testified on his own behalf and represented himself at trial, which involved communicating with both the trial court, prosecutor, and witnesses. He never asked for an interpreter, and there is nothing in the record to indicate that he understands or speaks sign language. While Istre did request that his cellmate be allowed

9

sit with him to aid him during trial, the trial court denied this request because it was clear that Istre wanted help with his paperwork. There is no indication that Istre's cellmate would have aided him in hearing the proceedings or that he possessed any interpretive skill or experience, or what it was that he would have interpreted. When alerted to the fact that Istre may have some hearing difficulty at the outset, the trial court immediately provided the headphones for his use and was never made aware at any point thereafter that Istre allegedly continued to have any trouble hearing. We do not find that the trial court violated La. R.S. 15:270, and thus, this assignment of error is without merit.

**Second Assignment of Error: The trial court violated Istre's due process rights to a fair trial when it failed to instruct the jury that witness intimidation, as set forth in La. R.S. 14:129.1, required a specific finding of intent.**

Istre contends that the trial court erred in failing to instruct the jury that witness intimidation requires a specific finding of intent. Proof of specific intent is required where the statutory definition of a crime includes the intent to produce or accomplish some prescribed consequence. *State v. Speed*, 43,786 (La. App. 2 Cir. 1/14/09), 2 So. 3d 582, *writ denied*, 09-0372 (La. 11/6/09), 21 So. 3d 299. La. R.S. 14:129.1(A) states:

No person shall intentionally:

(1) Intimidate or impede, by threat of force or force, or attempt to intimidate or impede, by threat of force or force, a witness, or a member of his immediate family *with intent to influence his testimony, his reporting of criminal conduct, or his appearance at a judicial proceeding.*

(emphasis added.) The court, when speaking to the jury about the jury instructions, read the definition of specific and general intent after it defined sexual battery. The trial court then read the following to the jury:

10

> Thus, in order to convict the defendant of witness intimidation, you must find: (1) that the defendant intimidated or impeded, by threat of force or force, or attempted to intimidate or impede, by threat of force or force, a witness Michelle Aimee Jane; or the defendant had the intent to influence Michelle Aimee Jane's testimony, reporting of criminal conduct, or appearance at the judicial proceeding. Criminal intent has already been defined for you.

La. C. Cr. P. art. 801(C) sets out the procedure for challenging jury instruction, as follows:

> A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error. The nature of the objection and grounds therefor shall be stated at the time of objection. The court shall give the party an opportunity to make the objection out of the presence of the jury.

Generally, a party may not assign as error a complaint to a jury charge in the absence of a contemporaneous objection. *State v. Belgard*, 410 So. 2d 720 (La. 1982); *State v. Speed*, *supra*; *State v. Wilson*, 28,403 (La. App. 2 Cir. 8/21/96), 679 So. 2d 963. An invalid instruction on the elements of an offense is not a structural error and is, therefore, subject to harmless error review and only warrants reversal when the defendant is actually prejudiced by the error. *State v. Speed*, *supra*. An invalid instruction on the elements of an offense is harmless if the evidence is otherwise sufficient to support the jury's verdict and the jury would have reached the same result if it had never heard the erroneous instruction. *State v. Speed*, *supra*. The determination is based upon whether the guilty verdict actually rendered in this trial was surely unattributable to the error. *Id*. *See State v. Hollins*, 99-278 (La. App. 5 Cir. 8/31/99), 742 So. 2d 671, *writ denied*, 99-2853 (La. 1/5/01), 778 So. 2d 587; *State v. Page*, 96-227 (La. App. 5 Cir. 8/28/96), 680 So. 2d 104, *writ denied*, 96-2543 (La. 9/19/97), 701 So. 2d 153, where the

trial courts incorrectly instructed juries that an essential element of the charged crime was general intent for specific intent crimes and the appellate courts upheld the verdicts after observing that the courts had properly instructed the juries on the elements of the crime and determining that the evidence supported the convictions.

In this case, because no contemporaneous objection was made by Istre to the jury charge, he is statutorily precluded from raising this issue on appeal. However, even granting exceptional leeway to a pro se defendant (even with an appointed legal advisor), when considering the unique facts of this case, any error in the jury instruction is harmless and surely unattributable to the jury verdict. Here, the jury was correctly instructed as the definition of specific intent and given a close interpretation of the statutory definition of witness intimidation. Moreover, the facts in the record clearly indicate that, to the exclusion of any reasonable hypothesis of innocence, Istre specifically intended to intimidate Jane and prevent her from reporting the rape by threatening to kill her. He had already performed incredible acts of violence against her person, and she clearly believed his threat to kill her was real and actionable. The evidence present in this matter is sufficient to support the jury's verdict, and this assignment of error is without merit.

**Third Assignment of Error: The trial court's failure to timely consider and rule on Istre's post-verdict motion seeking to have a public defender re-appointed to represent him during the post-verdict stage of the proceedings violated Istre's right to counsel.**

Finally, Istre argues that the trial court erred in failing to timely consider and rule on his post-verdict motion seeking to have a public defender reappointed to represent him during the post-verdict stage of the

proceedings. The record reflects that after his conviction, Istre filed a motion for indigent defendant to withdraw as counsel of record, wherein Istre requested that the trial court reinstate Ms. Halterman as his counsel of record. At the hearing on this issue and others raised by Istre's post conviction motions, the trial court informed Istre that Ms. Halterman was recovering from a medical procedure and would be unable to represent him post-trial. The trial court appointed Mike Miller, the chief public defender, to assist Istre.

The Sixth Amendment to the U.S. Constitution, as well as La. Const. art. I, § 13, guarantee the accused in a criminal proceeding the right to assistance of counsel for his defense. *State v. Cooley*, 51,895 (La. App. 2 Cir. 5/23/18), 247 So. 3d 1159, *writ denied*, 18-1160 (La. 4/6/19), 266 So. 3d 899. As a general proposition, an accused person has the right to counsel of his choice. *State v. Leggett*, 363 So. 2d 434 (La. 1978); *State v. Cooley*, *supra*. However, that right is not absolute and cannot be manipulated so as to obstruct orderly procedure in courts and cannot be used to thwart the administration of justice. *State v. Jones*, 376 So. 2d 125 (La. 1979); *State v. Cooley*, *supra*.

If a defendant is indigent, he has the right to court-appointed counsel; however, an indigent defendant does not have the right to have a particular attorney appointed to represent him. *State v. Harper*, 381 So. 2d 468 (La. 1980); *State v. Bell*, 51,312 (La. App. 2 Cir. 5/17/17), 222 So. 3d 79. A criminal defendant who has been appointed counsel has no right under the Sixth Amendment to the counsel of his choice. *State v. Reeves*, 06-2419 (La. 5/5/09), 11 So. 3d 1031, *cert. denied*, 558 U.S. 1031, 130 S. Ct. 637, 175 L. Ed. 2d 490 (2009). An accused's unquestioned right to legal

representation at trial cannot be manipulated by him, by attempts at last minute substitution or otherwise, so as to secure unwarranted delays or otherwise obstruct the orderly administration of justice. *State v. Bell*, *supra*.

In order to be valid, a waiver of the right to counsel by a defendant must be made knowingly, understandingly, and intelligently. *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975); *State v. Flanagan*, 32,535 (La. App. 2 Cir. 10/29/99), 744 So. 2d 718. A defendant may waive his right to counsel if he knows what he is doing, and his choice is made with eyes open, and the record reflects his awareness of the dangers and disadvantages of self-representation. *State v. Flanagan*, *supra*. There is no particular formula which must be followed by the trial court in determining whether the defendant has waived his right to counsel. *Id.* The determination of whether a defendant knowingly and voluntarily waived his right to counsel depends on the facts and circumstances surrounding the case, including the background, experience, and conduct of the accused. *Id.*

There is no question that Istre validly waived his right to counsel and chose to proceed pro se in the trial on this matter. His only complaint is that he was not appointed counsel for the post-conviction proceedings. However, the record reflects that Istre specifically requested that Ms. Halterman be appointed as his counsel post-conviction. When informed by the trial court that Ms. Halterman would not be able to represent him because she was recovering from a medical procedure, Istre elected to continue to defend himself. He did not request that Mr. Miller be appointed his counsel nor did he refuse to argue his pro se motions. Istre clearly knew and understood the dangers of representing himself. His only request to the trial court was for the appointment of Ms. Halterman, and Istre, as an

14

indigent defendant, is not entitled to representation of his choice.  When informed that Ms. Halterman could not represent him, Istre made no further arguments or demands for representation.  Considering his knowing and intelligent waiver of representation, this assignment of error is without merit.

## ERRORS PATENT

In conducting our review for errors patent in accordance with La. C. Cr. P. art. 920, we note that the trial court failed to inform Istre of the sex offender notification and registration requirements, as mandated by La. R.S. 15:543.  Defendant's conviction for first degree rape, a "sex offense" as defined by La. R.S. 15:541, require the defendant be subjected to the sex offender notification and registration requirements.  La. R.S. 15:542.  Pursuant to R.S. 15:543, the trial court is required, using the form contained in La. R.S. 15:543.1, to notify a defendant convicted of a sex offense in writing of the registration and notification requirements.  The statute further requires that an entry be made in the court minutes stating the written notification was provided.

Here, a review of the record and minutes reveals the trial court did not inform Istre, either orally or in writing, of the sex offender notification and registration requirements. As a result, remand is required with instructions to the trial court to provide the appropriate written notice to Istre of the sex offender registration requirements and to make an entry in the court minutes stating such notice was provided.  La. R.S. 15:543; *State v. Vinson*, 54,580 (La. App. 2 Cir. 6/29/22), 342 So. 3d 469, *writ denied*, 22-01188 (La. 10/4/22), 347 So. 3d 888.

Additionally, a review of the record reflects the trial court failed to observe the requirements of La. C. Cr. P. art. 873 following its denial of

15

Istre's motion for new trial and motion in arrest of judgment. If a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least 24 hours after the motion is overruled. If the defendant expressly waives a delay provided for in this article, sentence may be imposed immediately. La. C. Cr. P. art. 873. The record reveals the trial court sentenced Istre immediately following the denial of his motions for new trial and in arrest of judgment, but it does not indicate Istre waived the 24-hour delay mandated by statute.

As it pertains to the first degree rape conviction, while the language in La. C. Cr. P. art. 873 is mandatory, when the sentence given is statutorily required, then the trial court's failure to observe the 24-hour period can be considered harmless error as the trial court had no discretion in the sentence imposed. *State v. Seals*, 95-0305 (La. 11/25/96), 684 So. 2d 368; *State v. Thomas*, 55,183 (La. App. 2 Cir. 8/9/23), 369 So. 3d 953, *writ denied*, 23-01249 (La. 2/14/24), 379 So. 3d 26. For this reason, despite the trial court's failure to adhere to the requirements of La. C. Cr. P. art. 873, we affirm the mandatory life sentence without parole, probation, or suspension of sentence imposed by the trial court.

However, when the trial court is not required to impose a mandatory sentence, as with a conviction for witness intimidation, we are constrained to vacate the sentence imposed and remand the matter for resentencing pursuant to La. C. Cr. P. art. 873.

Finally, in sentencing Istre on his two charges, the trial court was silent as to whether it was imposing those sentences to be served concurrently or consecutively. Pursuant to La. C. Cr. P. art. 883, there is a presumption that the sentences shall be served concurrently; however, as the

16

sentence for witness intimidation is being vacated, the trial court is also instructed to indicate whether it is imposing that sentence to run consecutive or concurrent to the first degree rape case and the reasons therefor.

## CONCLUSION

For the foregoing reasons, Gladue Istre's convictions are affirmed and his life sentence without the benefit of parole, probation, or suspension of sentence for first degree rape is also affirmed. We vacate the sentence imposed for witness intimidation and remand the matter for resentencing in compliance with La. C. Cr. P. art. 873. This matter is further remanded to the trial court with instructions to correct the minutes and to provide defendant with written notice of the requirement that he register as a sex offender and to indicate whether the sentences imposed are ordered to run concurrently with or consecutively to one another.

**CONVICTIONS AFFIRMED; SENTENCE FOR FIRST DEGREE RAPE AFFIRMED; SENTENCE FOR WITNESS INTIMIDATION VACATED AND CASE REMANDED WITH INSTRUCTIONS.**